NOTICE
Decision filed 07/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260336-U

NO. 5-26-0336

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-106 |
| | ) | |
| GAIGE A. RUSSELL, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Justices McHaney and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    Defendant, Gaige A. Russell, appeals from the Jefferson County trial court's March 31, 2026, order granting the State's petition to deny pretrial release, along with the court's April 8, 2026, denial of his motion for relief and immediate release.[1] For the following reasons, we affirm.

---

[1]We note that the record before us, consisting of a common law record, report of proceedings, and an impounded common law record, does not contain a written order denying defendant's motion for relief. Rather, the report of proceedings reveals that at the April 8, 2026, hearing on defendant's motion for relief, the trial court made an oral ruling denying the motion with reasons given on the record.

1

¶ 3                          I. BACKGROUND

¶ 4     On March 28, 2026, defendant was arrested and subsequently charged with aggravated domestic battery (720 ILCS 5/12-3.2(a)(1), 12-3.3(a-5) (West 2024)), a Class 2 felony, as well as domestic battery (*id.* § 12-3.2(a)(2)), a Class 4 felony, which was enhanced due to a prior violation of an order of protection (Jefferson County case No. 22-CM-23) (see *id.* § 12-3.2(b)). Two days later, the State filed a verified petition to deny defendant pretrial release, alleging that defendant was charged with detainable offenses, being aggravated domestic battery and domestic battery, that his pretrial release posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate that threat. 725 ILCS 5/110-6.1(a)(4), (e)(1)-(3) (West 2024).

¶ 5     A timely pretrial detention hearing followed on March 31, 2026, where the State presented its evidence by proffer. Officer Devin Jackson of the Mount Vernon Police Department would testify that on March 28, 2026, he responded to a domestic disturbance call at defendant's residence. When Officer Jackson arrived outside the residence, a man identified himself as the father of the alleged victim, Karmella Aguilar, and advised Officer Jackson that his daughter was the subject of an ongoing domestic disturbance. Aguilar's father further advised Officer Jackson that his daughter was inside the home and that defendant would not let her out.

¶ 6     Thereafter, Officer Jackson made contact with defendant at the front door and asked to speak to Aguilar. According to Officer Jackson, defendant stated he would not cooperate with police and he would not let them enter the home. Defendant indicated that Aguilar was in the shower and not available to speak with police. Moments later, however, Aguilar "appeared fully clothed and appeared to be dry." She had "bruising around her left eye" that looked "black." She

2

also "had bruising around her right eye and a cut above her eye, as well as a busted lip." Aguilar complained of severe pain, claiming she could not bend over.

¶ 7    Aguilar would testify that at 4 a.m. that morning, she was arguing with defendant wherein he accused her of cheating on him. Defendant then punched Aguilar "repeatedly in the face with a closed fist and knock[ed] her on the ground and then kick[ed] her in the side." He then dragged her "to the bathroom by her hair."

¶ 8    Aguilar eventually was taken to the hospital. Emergency medical service (EMS) and hospital staff would testify that, due to her injuries, Aguilar suffered three broken ribs, a bruised lung, various bruises to her face, and a busted lip.

¶ 9    Defense counsel proffered that defendant was 23 years old and resided with Aguilar at the address where he was arrested in Mount Vernon. Defendant completed his junior year in high school and was a lifelong resident of Jefferson County. Further, defendant had "significant" family ties to Jefferson County, including his eight-month-old daughter with Aguilar, his mother, father, grandfather, grandmother, a brother, and two sisters, all of whom resided in Jefferson County. He had been employed at Linus Rapp Construction for a couple months, and, before that, he had worked at Antolin in Nashville, Illinois. Defendant claimed he could return to work at Linus.

¶ 10    At the time of his arrest, defendant was not on bond or pretrial release, nor was he on parole or work release. He was, however, on felony probation for a prior obstruction of justice conviction (Jefferson County case No. 24-CF-290), and he was on court supervision for a misdemeanor driving under the influence (DUI) conviction (Jackson County case No. 23-DT-23). Defendant had never been sentenced to the Department of Corrections, and he did not use a weapon in the commission of the alleged offense. Additionally, he was the sole financial provider for his family.

3

He paid "all the bills, and he [was] the main caregiver for his eight-month-old daughter, as well as being her main support."

¶ 11    The State proceeded to argument, asserting it presented sufficient evidence showing that defendant committed aggravated domestic battery and domestic battery against Aguilar, both of which are detainable offenses (see *id.* 110-6.1(a)(4)), that resulted in extensive injuries and great bodily harm to Aguilar. The State also highlighted defendant's criminal history, which included two felony convictions for obstruction of justice and mob action, as well as misdemeanor convictions for a DUI and violation of an order of protection. Further, defendant had charges pending for an aggravated DUI and fleeing or attempting to elude peace officers. The State asserted that defendant was already subject to court probation and supervision orders that required him to follow the law, yet he had not done so. Instead, he "continue[d] to thumb his nose at the law" and "rack up criminal offenses." The State argued that defendant posed a danger to Aguilar and the community and that no condition or combination of conditions "would protect [Aguilar] or the public." The State thus asked the court to deny pretrial release.

¶ 12    In response, defense counsel argued that defendant was not a danger to any person or persons or the community, emphasizing that no weapon was used in this offense. Defense counsel further argued that less restrictive conditions were appropriate in this case so that defendant could "get out and keep supporting his child." Specifically, defense counsel requested that defendant be placed on home confinement at his prior residence with work-release so that he could financially support his daughter. Defense counsel also noted that defendant did not oppose electronic monitoring or a no-contact order with Aguilar.

¶ 13    The trial court stated that it considered the proffered evidence from both parties, defendant's age, his employment and financial responsibilities, and the fact that no weapon was

4

involved in the alleged offense. The court also considered defendant's criminal history, which included other crimes of violence and two felony convictions, as well as the nature of the offense in this case. The court stated that the proffered evidence indicated the State would have "a strong case and likelihood of conviction" for aggravated battery given that Aguilar sustained great bodily harm, including three broken ribs and a bruised lung, among other injuries. Finally, the court considered that defendant was on probation and court supervision when the alleged offense occurred, noting that he had "not abided by either one of those by getting into this scrape." The court also noted that defendant had a couple failures to appear.

¶ 14 The trial court subsequently granted the State's petition to detain defendant, finding he posed a threat to Aguilar and the community due to his record, and that no conditions would either ensure Aguilar and the public's safety or that defendant would "abide by Pretrial Service's order." The court entered a written order for detention the same day, finding that, by clear and convincing evidence, the proof was evident or presumption great that defendant committed a qualifying offense; he posed a real and present threat to any person, persons, or the community, based on the specific articulable facts of the case; and no condition or combination of conditions could mitigate that threat. Regarding conditions, the trial court specifically found that no less restrictive conditions would be sufficient based on defendant's criminal history and previous violations of court orders.

¶ 15 On April 2, 2026, defendant filed a motion for relief and immediate pretrial release.[2] The motion generally alleged that the trial court erroneously granted the State's petition to deny pretrial release because the State failed to meet its burden of proving by clear and convincing evidence

---

[2]At the hearing on defendant's motion, defense counsel moved, successfully, to amend the motion for relief by interlineation to correct a few errors concerning defendant's arrest date, charges, and date of the pretrial release hearing.

that the proof was evident or presumption great that defendant committed a detainable offense, posed a real and present threat to the safety of any person, persons, or the community, and that no condition or combination of conditions could mitigate that threat. More specifically, defendant alleged that the trial court failed to fully consider his ties to the community, his employment opportunities and financial responsibilities to his family, his willingness to abide by any terms of pretrial release, and that no weapon was used in the commission of the alleged offense.

¶ 16    The trial court held a hearing on the motion on April 8, 2026. Defense counsel provided the same factual proffer regarding defendant's age, familial ties to the community, employment history, and financial responsibilities. Defense counsel again emphasized that no weapon was used in the alleged offense, that defendant was not on bond, pretrial release, parole, or work release, and that he had never been sentenced to the Department of Corrections. Defense counsel then asked that defendant be released on electronic monitoring and home confinement to his previous residence with work release. Defense counsel indicated that defendant would also accept a no-contact order as to Aguilar.

¶ 17    The State proceeded by proffer, reiterating the information provided at the initial detention hearing. Furthermore, the State asserted that on the day of the alleged offense, Aguilar's father saw his daughter "waiving from a window believed to be the bathroom appearing to beg for help." Likewise, Aguilar's sister, Helena, indicated that Aguilar had called her whispering, " 'Please call the cops, please call the cops, he beat me up really bad.' " According to Helena, defendant then began yelling in the background and the call disconnected. The State repeated Aguilar's version of events from the initial detention hearing, adding that after defendant punched Aguilar and she fell to the floor, he dragged "her by her hair from the doorway to the bathroom to rinse the blood from her face in the shower."

¶ 18    The State further proffered that "[h]ospital staff, [and] Karmella Aguilar herself, advised that she had three fractured ribs and a potential[ly] bruised and possibly bleeding lung relating to the incident." Finally, the State revisited defendant's criminal history and prior court orders for probation and supervision, none of which were sufficient "to deter him from the actions of March 28." The State argued that nothing short of detention would adequately deter defendant from committing additional crimes and guarantee Aguilar and the community's safety.

¶ 19    The trial court stated it considered several factors in defendant's favor, including his age, ties to the community, and employment history. The court, however, also considered the nature of the charge, "which is a very serious charge," and defendant's criminal history, which, as stated, included two felony convictions for obstruction of justice and mob action, as well as misdemeanor convictions for a DUI and violation of an order of protection. Further, defendant was already on probation and court supervision at the time of the alleged offense. The trial court consequently found that no condition or combination of conditions would ensure he adhered to court orders and that he posed a danger to Aguilar and the public. The court denied defendant's motion for relief, and he appealed.

¶ 20                                    II. ANALYSIS

¶ 21    Pretrial release—including the conditions related thereto—is governed by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has

7

committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* §§ 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 22 In determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community, courts may consider

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

8

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.* § 110-6.1(g)(1)-(9). No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 23    We review the trial court's pretrial release determination in this case *de novo*. See *People v. Morgan*, 2025 IL 130626, ¶ 54 (stating, where, as here, the "parties to a pretrial detention hearing proceed solely by proffer, the reviewing court is not bound by the circuit court's factual findings and may therefore conduct its own independent *de novo* review of the proffered evidence and evidence otherwise documentary in nature").

¶ 24    On appeal, defendant filed a notice in lieu of memorandum. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) (stating, an "appellant may file, but is not required to file, a memorandum" on

9

appeal). Accordingly, defendant's motion for relief in this case serves as his argument on appeal. See *id.* ("Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed."). Defendant's motion for relief states the following:

"7. The Court erred in granting the State's Petition to Deny Pre-Trial Release at said hearing, in that the State failed to meet its burden of proving by clear and convincing evidence any of the above in that:

a. The Court failed to fully consider Defendant's ties to the community.

b. The Court failed to fully consider Defendant's employment opportunities and financial responsibilities to his family.

c. The Court failed to fully consider Defendant's willingness to abide by any terms of pre-trial release.

d. No weapon was used in the commission of the allege[d] offense."

As stated, defendant did not file a memorandum in this appeal. Therefore, this represents his arguments before this court. See *id.*

¶ 25    Defendant, however, has not specified how each factor applies to each element of detention, nor has he developed any legal argument with respect to these contentions. "Whether made in the motion for relief alone or as supplemented by the memorandum, the form of the appellant's arguments must contain sufficient detail to enable meaningful appellate review, including the contentions of the appellant and the reasons therefore and citations of the record and any relevant authorities." *Id.* A reviewing court is entitled to have the issues clearly defined and supported by relevant authority and cohesive arguments; it is not merely a repository into which parties may foist the burden of argument and research, nor is it the obligation of this court to act

10

as an advocate for the parties. See *Atlas v. Mayer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33.

¶ 26 While defendants may rely on their Rule 604(h)(2) motion for their arguments on appeal, they must, nevertheless, adhere to the requirements of the rule or risk facing the consequences of noncompliance. *People v. Post*, 2025 IL App (4th) 250598, ¶ 23. Indeed, reviewing courts are "being pushed to engage in an ever-increasing amount of advocacy for criminal defendants—a position that is not acceptable." *Id.* Defendants, therefore, "must endeavor to present a more complete analysis of the issues in their motions for relief or, as the rule allows, file a supplemental memorandum in support of the appeal rather than relying on the appellate court to do the work for them." *Id.* Defendant did neither here.

¶ 27 Rather, defendant's motion for relief asserts that the trial court erroneously granted the State's petition to deny pretrial release because the State did not meet its burden of proof for "any of the above," which refers to the elements of the statute set forth above (see *supra* ¶ 21). Defendant then included a list of factors he claimed the trial court "failed to fully consider" as to all elements of the statute, such as his ties to the community, employment history, financial obligations, willingness to adhere to any pretrial terms, and that no weapon was involved. Yet, the broad language employed in his motion does not address how the State failed to prove *each* element of the statute. Nor does it provide this court with sufficient detail to enable meaningful appellate review, in violation of Rule 604(h)(7). Such noncompliance with the rule's requirements effectively waives the issue on appeal. Ill. S. Ct. R. 604(h)(2), (7) (eff. Apr. 15, 2024).

¶ 28 Regarding whether the proof is evident or presumption great that defendant committed a detainable offense, none of the factors contained in the motion apply. The State has correctly observed that defendant's motion did not adequately challenge the trial court's finding that he

committed a detainable offense, thereby waiving the issue on appeal. See. Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived.").

¶ 29    With respect to whether defendant posed a real and present threat to the safety of any person or the community, the only applicable factor is that no weapon was used in the alleged offense. See 725 ILCS 5/110-6.1(g)(1) (West 2024) (noting, courts may consider the "nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon."). Accordingly, we must evaluate whether defendant posed a real and present threat.

¶ 30    Initially, the State again asserts that defendant did not sufficiently argue this issue in his motion for relief in order to preserve it on appeal. While we agree that defendant did not develop a legal argument with respect to the real and present threat element of the statute, he did aver that no weapon was used in the alleged offense. Thus, we cannot say that he entirely waived the issue on appeal. We find that defendant posed a real and present threat to Aguilar specifically, as well as the community.

¶ 31    The nature and circumstances of the offense charged against defendant in this case involved crimes of violence against Aguilar. *Id.* Additionally, the history and characteristics of defendant include two felony convictions for obstruction of justice and mob action, as well as misdemeanor convictions for a DUI and violation of an order of protection. The pretrial investigation report revealed that defendant had two other cases pending with multiple charges. In case No. 26-CF-82, he was charged with an aggravated DUI on a suspended or revoked license (count I), obstructing justice/destroying evidence (count II), driving under the influence of alcohol (count III), and driving on a suspended license (count IV). In case No. 25-MT-256, defendant was charged with

12

fleeing/attempting to elude a peace officer (count I) and reckless driving (count II). Defendant's apparent disregard for the law poses a threat to the public.

¶ 32    Likewise, defendant poses a threat to Aguilar based on his alleged domestic violence against her that resulted in significant injuries. *Id.* § 110-6.1(g)(3). As set forth above, Aguilar claimed that defendant accused her of cheating on him, then punched her repeatedly in the face with a closed fist, knocked her to the ground, kicked her in the side, and dragged her by her hair to the bathroom where he washed blood from her face. Aguilar's father claimed he saw his daughter "waiving from a window believed to be the bathroom appearing to beg for help." Similarly, Aguilar's sister, Helena, indicated that Aguilar had called her whispering, " 'Please call the cops, please call the cops, he beat me up really bad.' " Aguilar's injuries included three broken ribs, a bruised and possibly bleeding lung, multiple bruises to her face, and a busted lip.

¶ 33    We acknowledge that defendant was not on bond, pretrial release, parole, or work release at the time of the alleged offense. He was, however, on felony probation for a prior obstruction of justice conviction and on court supervision for a misdemeanor DUI conviction. *Id*. § 110-6.1(g)(8). Still, he decided to violate the law. Given all these factors, we cannot say the trial court erred in finding the State proved by clear and convincing evidence that defendant posed a real and present threat to the safety of Aguilar and the community.

¶ 34    Defendant's motion for relief argued that the trial court failed to fully consider his ties to the community, employment opportunities, financial responsibilities, and his willingness to abide by any terms of pretrial release. These factors apply to whether the State met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-

5(a). We proceed in our review of whether any conditions would mitigate defendant's real and present threat.

¶ 35 After reviewing the record before us, we find the following factors support the conclusion that no condition or combination of conditions could mitigate the real and present threat posed by defendant. First, the nature and circumstances of the offense in this case. Defendant was charged with aggravated domestic battery and domestic battery. Both crimes involved violence, and the latter charge was enhanced due to defendant's criminal history. *Id.* § 110-5(a)(1). Second, the proffered evidence against defendant included observation of Aguilar's injuries by Officer Jackson, which was consistent with the injuries observed and treated by EMS and hospital staff. Aguilar's own account of what happened was consistent with her injuries, specifically, that defendant punched her repeatedly in the face with a closed fist, knocked her to the ground, kicked her in the side, then dragged her to the bathroom by her hair where he washed blood from her face.

¶ 36 Furthermore, defendant's criminal history was not insignificant, especially for his young age. He had two felony convictions, along with two misdemeanor convictions including an order of protection violation. At the time of his arrest, defendant had two other cases pending with multiple charges, and he was already on probation and court supervision. As defendant clearly has a propensity to violate the law, we are not convinced that he would abide by any terms of pretrial release, like electronic monitoring or a no-contact order with Aguilar. Accordingly, we agree with the trial court that no condition or combination of conditions would mitigate the threat posed by defendant.

¶ 37                                                    III. CONCLUSION

¶ 38    For the foregoing reasons, we affirm the trial court's orders of March 31, 2026, and April

8, 2026.

¶ 39    Affirmed.